UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP MCKENZIE PAYNE,

           Petitioner,

                             CASE NO. 2:18-CV-10231
    v.                        HON. GEORGE CARAM STEEH
                             UNITED STATES DISTRICT JUDGE

SHERMAN CAMPBELL,[1]

           Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

      Phillip Mckenzie Payne, ("petitioner"), confined at the Gus Harrison Correctional Facility in Adrain, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his application, filed through his attorney, Laura Kathleen Sutton, petitioner challenges his conviction for guilty but mentally ill of second-degree murder, M.C.L. §750.317, and guilty but mentally ill of possession of a firearm during the commission of a felony (felony-firearm), M.C.L. §750.227b.  Petitioner was sentenced to 270 to 540 months' imprisonment for the second-degree murder conviction and 24 months' imprisonment for the felony-firearm

_____

      [1]The Court amends the caption to reflect the current warden of petitioner's incarceration.

conviction.

Respondent alleges that Claims ## I, III, IV, and V are untimely and should be dismissed. Respondent also contends that Claims ## II, III, and portions of Claim # IV are procedurally defaulted.[2] For the reasons stated below, the petition for a writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This appeal arose from the shooting and death of Richard Jennings that occurred on November 30, 2011, on Ferguson Street, a residential street in the city of Detroit. Defendant and Jennings were childhood friends that knew each other for over 20 years, and at one point, lived together on Ferguson Street. In recent years, their relationship was described as "rocky" and a number of witnesses observed defendant and Jennings arguing regularly. Defendant was diagnosed with schizoaffective bipolar disorder in 2001, and was hospitalized over 20 times for his condition in 10 years preceding the shooting. On the day of the shooting, defendant left his grandmother's house and went to Ferguson Street, where

---

[2]In this case, because "the procedural default issue raises more questions than the case on the merits", this Court will assume, for the sake of resolving the claims, that there is no procedural default by petitioner and will decide the merits of the claims. *Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003)(internal quotation omitted).

Jennings continued to live. Jennings and defendant got into a verbal confrontation on the street concerning marijuana that defendant allegedly stole from Jennings. The verbal altercation escalated and they started to push each other. Jennings then took his coat and shirt off and confronted defendant. As defendant started to walk away, Jennings pushed the back of defendant's head. Defendant pulled a gun out of his coat and shot Jennings twice. Jennings fell to the ground, and according to the testimony of several witnesses, when Jennings sat up and faced defendant, defendant stood over Jennings and fired two more shots, one directly to his face.

Defendant was arrested and charged with first-degree murder, second-degree murder, and felony-firearm. Defendant's trial counsel presented a defense of insanity, claiming that defendant was not criminally responsible for his actions at the time of the shooting due to his mental illness. The jury was instructed on self-defense, mental illness, and legal insanity. Additionally, the jury was instructed on first-degree murder, the lesser charge of second-degree murder, or in the alternative, voluntary manslaughter. The jury found defendant guilty but mentally ill of second-degree murder and guilty but mentally ill of felony-firearm.

*People v. Payne*, No. 314563, 2014 WL 2040052, at *1 (Mich. Ct. App. May 15, 2014).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 497 Mich.

952, 858 N.W.2d 49 (2015).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. There was insufficient evidence to support the conviction of second degree murder.

II. Phillip McKenzie Payne's sentences were imposed in violation of his Sixth and Fourteenth Amendment rights.

III. Phillip McKenzie Payne's rights under the due process clause of the Fourteenth Amendment were violated by the court's jury charge.

IV. Phillip McKenzie Payne was denied the effective assistance of trial counsel.

V. Phillip McKenzie Payne is entitled to relief because he was denied his right to the effective assistance of counsel on his direct appeal.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the

Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be

reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III. Discussion

**A. Claim # 1 - The sufficiency of evidence claim.**

Petitioner argues there was insufficient evidence to convict him of second-degree murder.

The Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the crucial question in reviewing the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after the evidence is viewed in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that

rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the Jackson standard. *See Cavazos v. Smith*, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *See Stewart v. Wolfenbarger*, 595 F.3d 647, 654 (6th Cir. 2010)(citing *People v. Goecke*, 457 Mich. 442 463-64; 579 N.W.2d 868 (1998)). "[M]alice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful

disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. (citing *People v. Aaron*, 409 Mich. 672, 728; 299 N.W.2d 304 (1980)).  Additionally, "[t]he offense of second-degree murder 'does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences.'" *Stewart*, 595 F.3d at 658 (quoting *People v. Aldrich*, 246 Mich. App. 101, 123; 631 N.W.2d 67 (2001)).

Petitioner contends that there was insufficient evidence presented to sustain his conviction for second-degree murder, because the prosecution failed to prove beyond a reasonable doubt that petitioner did not kill the victim in the heat of passion that was caused by an adequate provocation.

Under Michigan law, a defendant is guilty only of voluntary manslaughter if he "killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Rails v. Wolfenbarger*, 580 F.3d 403, 413 (6th Cir. 2009)(quoting *People v. Mendoza*, 468 Mich. 527, 535, 664 N.W.2d 685 (2003)).  However, although the prosecutor must prove their case beyond a reasonable doubt, under Michigan law, the burden of proof to show provocation is on the defendant, and it must be

shown by a preponderance of the evidence. *Id.* (citing *People v. Dards*, 230 Mich. App. 597, 604, 585 N.W.2d 27, 31 (1998)). Absence of provocation is not an element which the prosecution must prove to support a conviction of second-degree murder in Michigan. *See Cook v. Steagall*, 56 F. Supp. 2d 788, 795-96 (E.D. Mich. 1999)(citing *People v. Reason*, 148 Mich. App. 27; 384 N.W.2d 72 (1985)).

Habeas review of sufficiency-of-the-evidence claims is limited to reviewing the elements of the crimes as defined by state law. *See Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir. 1988)(explaining that and citing *Eagle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Holtz*, 804 F.2d 50 (6th Cir. 1986)). "[If an ingredient of a crime is not an element of the offense and does not negate an element, ... a state law can properly shift the burden of proving that factor onto the defendant." *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2001), *overruled on other grounds* by *Bowling v. Parker*, 344 F.3d 487, 501 n. 3 (6th Cir. 2003). Because absence of provocation is not an element of second-degree murder, it was not necessary for the prosecutor to prove beyond a reasonable doubt that petitioner did not act under an adequate provocation when he killed the victim, so as to sustain his conviction for second-degree murder.

The evidence, when viewed in a light most favorable to the prosecutor, was sufficient to permit a rational trier of fact to conclude that petitioner acted with malice when he shot the victim twice while standing and then twice in the head, after the victim fell to the ground, so as to support a conviction for second-degree murder.

The Michigan Court of Appeals held that there was sufficient evidence of malice to support petitioner's conviction for second-degree murder as follows:

> In viewing the evidence in a light most favorable to the prosecution, sufficient evidence was presented from which a rational trier of fact could find that the prosecution proved the element of malice beyond a reasonable doubt. After Jennings pushed defendant in the back of the head, defendant pulled the gun from his coat and shot Jennings twice. Then, defendant walked up to Jennings, who was sitting on the ground, and shot him two more times, one of which was to the face. Clearly, defendant possessed the intent to kill when he aimed the gun at defendant and shot him four times.[3]
>
> Defendant asserts that even assuming he possessed the intent to kill, the issue remains unanswered as to whether adequate provocation negated the presence of malice. The elements of voluntary manslaughter are included in the elements of murder, and thus, voluntary manslaughter is a necessarily included lesser offense of murder. *People v. Mendoza*, 468 Mich. 527, 541; 664 NW2d 685 (2003). In order to prove voluntary

---

[3]Additionally, evidence was presented from forensic psychologist Judith Block who testified that defendant's behavior appeared organized and goal-directed. (Footnote original).

manslaughter, "one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Id.* at 535. Provocation is not an element of voluntary manslaughter, but rather, a circumstance that negates the presence of malice, and must have caused a reasonable person to lose control. *Id.*; *People v. Pouncey*, 437 Mich. 382, 389; 471 NW2d 346 (1991). Thus, the provocation must cause a reasonable person to act out of passion rather than reason. *Pouncey*, 437 Mich. at 390. Any special traits of the particular defendant cannot be considered, and the fact that the defendant may have had some mental disturbance is not relevant to the question of provocation. *People v. Sullivan*, 231 Mich.App 510, 519–20; 586 NW2d 578 (1998).

************************************************************************

A review of the evidence establishes that adequate provocation to shoot Jennings four times did not exist. There is no evidence that defendant was in a highly inflamed state of mind: testimony established that defendant and Jennings got into a verbal argument when Jennings accused defendant of stealing marijuana from him. Testimony further revealed that Jennings and defendant had a very long relationship, most of which involved heated arguments. As witnesses who knew both men testified it was not unusual to come upon them during the course of an argument. On the day of the shooting, testimony revealed that defendant and Jennings got into each other's faces and started to push each other. Jennings then took off his coat and shirt. Defendant turned around to walk away, and Jennings pushed the back of defendant's head. In response, defendant pulled a gun out of his coat and Jennings dared defendant to shoot him. Defendant then shot Jennings twice, which caused him to stumble over and fall down. Then, as previously stated, while Jennings was sitting upright on the ground, defendant walked up to Jennings and shot him two more times, once in the face. Although evidence was presented that Jennings was the first aggressor when he pushed the back of defendant's head while defendant was walking away, this is

insufficient to cause a reasonable person to pull out a gun and shoot. With the exception of defendant's testimony, none of the eye witnesses observed Jennings with a weapon.

Additionally, the testimony presented does support a conclusion that defendant's ability to reason was blurred by passion; his emotional state did not reach such a level that he was unable to act deliberately. *Pouncey*, 437 Mich. at 389. Even if he was scared and felt provoked, there was sufficient evidence for the jury to conclude that defendant's decision to fire his weapon initially at Jennings, and then two more times after Jennings was on the ground, was a deliberate and reasoned act. Furthermore, the events that transpired on the day of the shooting did not strike any of the witnesses who had known defendant and Jennings as unusual, until defendant resorted to lethal force. Given the totality of the testimony, we cannot conclude that a reasonable person under these circumstances would be provoked into shooting an unarmed individual four times merely because he was pushed from behind. Additionally, the fact that defendant's schizoaffective bipolar disorder may have been triggered from having the back of his head pushed is not relevant to the question of provocation. *Sullivan*, 231 Mich.App at 519–20. Therefore, viewing the evidence in the light most favorable to the prosecution, we cannot find that malice was negated by adequate provocation. Accordingly, defendant is not entitled to relief on this issue.

*People v. Payne*, 2014 WL 2040052, at *2-3.

The state court's determination that the prosecutor presented sufficient evidence to establish the element of malice in petitioner's second-degree murder prosecution was not clearly erroneous, so as to warrant habeas relief. *See Williams v. White,* 183 F. Supp. 2d 969, 975 (E.D. Mich.

2002).  In this case, the prosecution presented evidence that petitioner and the victim often argued in the past and on this particular day, petitioner and the victim got into a verbal argument when the victim accused petitioner of stealing marijuana from him.  When petitioner turned to walk away, the victim pushed the back of petitioner's head.  As a result, petitioner pulled a gun out from his coat.  The victim dared petitioner to shoot him.  Petitioner shot the victim twice, resulting in the victim falling to the ground.  Petitioner then walked up to the victim and shot him two more times in the head.

The mere fact that petitioner shot the victim four times provided sufficient evidence that petitioner acted with the requisite malice and intent required for a second-degree murder conviction. *See Kelley v. Jackson,* 353 F. Supp. 2d 887, 892 (E.D. Mich. 2005).  Sufficient evidence was presented for a reasonable trier of fact to find beyond a reasonable doubt that petitioner committed all of the elements of second-degree murder and that his killing of the victim was not justified by a claim of perfect self-defense or reduced to voluntary manslaughter by a claim of imperfect self-defense. *See Friday v. Pitcher,* 200 F. Supp. 2d 725, 743 (E.D. Mich. 2002); *aff'd* 99 F. App'x 568 (6th Cir. 2004); *cert. den.* 125 S. Ct. 661 (2004).

To the extent that petitioner argues that the prosecutor failed to prove his sanity beyond a reasonable doubt, he would also not be entitled to relief.

Petitioner raised an insanity defense at trial, which the jury rejected, choosing instead to find petitioner guilty but mentally ill.

As mentioned above, challenges to the evidence on the non-elements of an offense are not reviewable in a habeas petition. Under Michigan law, sanity is not an element of a criminal offense. Insanity is a burden-shifting affirmative defense, which places the burden of going forward with evidence of insanity on the defendant. *Duffy v. Foltz*, 804 F.2d 50, 54 (6th Cir. 1986)(citing *In Re Certified Question,* 425 Mich. 457, 459; 390 N.W.2d 620 (1986)). Because a criminal defendant's sanity is not an element of any criminal offense under Michigan law, any claim that there was insufficient proof of a defendant's sanity is not cognizable in federal habeas review. *See Duffy v. Foltz,* 804 F.2d at 54, *see also Allen v. Redman,* 858 F.2d 1194, 1199-1200 (6th Cir.1988)(petitioner was precluded from challenging sufficiency of evidence of sanity in federal habeas corpus proceeding; sanity was not, under Michigan law, element of those crimes, even though state assumed the burden of proving

defendant's sanity once affirmative defense of insanity was raised);

*Johnigan v. Elo,* 207 F. Supp. 2d 599, 612 (E.D. Mich. 2002)(same).  This

Court notes that "[p]roof of the nonexistence of all affirmative defenses has

never been constitutionally required...." *See Smith v. United States*,133 S.

Ct. 714, 719 (2013)(quoting *Patterson v. New York*, 432 U.S. 197, 210

(1977)).  Thus, petitioner's claim that there was insufficient proof of his

sanity does not entitle him to relief.

To the extent that petitioner claims that his mental illness negates the

specific intent to kill the victim, the Court notes that Michigan courts have

held that "evidence of mental incapacity short of insanity cannot be used to

avoid or reduce criminal responsibility by negating specific intent." *People*

*v. Lang*, No. 2013 WL 4081154, at *5, n. 23 (quoting *People v. Carpenter,*

464 Mich. 223, 237; 627 N.W.2d 276 (2001)).

State courts are the "ultimate expositors of state law." *Mullaney v.*

*Wilbur,* 421 U.S. 684, 691 (1975).  Therefore, what is essential to establish

the elements of a crime is a matter of state law. *See Sanford v. Yukins,* 288

F.3d 855, 862 (6th  Cir. 2002).  "[D]ue process does not require that a

defendant be permitted to present any defense he chooses.  Rather, states

are allowed to define the elements of, and defenses to, state crimes." *See*

*Lakin v. Stine,* 80 F. App'x 368, 373 (6th Cir. 2003)(citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)).  The circumstances under which a criminal defense may be asserted is thus a question of state law.  *Id.*  Because the Michigan courts have concluded that any mental incapacity short of legal insanity cannot be used to negate criminal intent, petitioner's claim is also non-cognizable.

### B. Claim # 2 - The sentencing claim.

Petitioner next contends that his Sixth and Fourteenth Amendment rights were violated "where the judge's discretion is not restrained by judicial guideline is required."  Petitioner cites to *Alleyne v. United States*, 570 U.S.99 (2013), but fails to articulate any argument as to how *Alleyne* applies to him or how the trial court judge violated his Sixth or Fourteenth Amendment rights at sentencing.

On June 17, 2013, the United States Supreme Court ruled that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. at 103.  *Alleyne* expands the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000),

*Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), in which the U.S. Supreme Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.  In reaching this conclusion, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), which held that only factors that increase the maximum, as opposed to the minimum, sentence must be proven beyond a reasonable doubt to a factfinder. *Alleyne*, 570 U.S. at 106-07.  The Supreme Court, however, indicated that the ruling in *Alleyne* did not mean that every fact influencing judicial discretion in sentencing must be proven to a jury beyond a reasonable doubt. *Id.* at 116.

The Michigan Supreme Court relied on *Alleyne* to hold that Michigan's mandatory sentencing guidelines scheme violates the Sixth Amendment right to a jury trial. *See People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (Mich. 2015).  The Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violated the Sixth Amendment, because the "guidelines require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score

offense variables that mandatorily increase the floor of the guidelines minimum sentence range, i.e., the "mandatory minimum" sentence under Alleyne." *Lockridge*, 498 Mich. at 364 (emphasis in original).

The Sixth Circuit recently granted habeas relief on a challenge to Michigan's sentencing guidelines holding that the United States Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional. *Robinson v. Woods*, 901 F.3d 710, 716-18 (6th. Cir. 2018); *petition for cert. filed* No. 18-680 (U.S. Nov. 23, 2018). In so ruling, the Sixth Circuit concluded that "[a]t bottom, Michigan's sentencing regime violated *Alleyne's* prohibition on the use of judge-found facts to increase mandatory minimum sentences. *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111-12).

This Court declines to grant petitioner habeas relief on his claim for several reasons.

First, as mentioned above, petitioner's sentencing claim is conclusory.

Second, the Michigan Attorney General has filed a petition for certiorari with the United States Supreme Court from the Sixth Circuit's decision in *Robinson*, which remains pending in the Supreme Court. *See*

18-680 (U.S.).  The Sixth Circuit's holding remains in limbo until the Supreme Court decides whether or not to grant certiorari to the Attorney General.

Third, a habeas court can only rely on the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether that decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate*, 267 F.3d 524, 530-31 (6th Cir. 2001).  A habeas court cannot look to the decisions of this circuit, or other courts of appeals, when deciding whether a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.*  Sixth Circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court" and thus "cannot form the basis for habeas relief under [the] AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012).  This Court cannot rely on *Robinson* to grant petitioner relief.  This is particularly so since prior to *Robinson*, the Sixth Circuit had concluded numerous times that the Supreme Court's holding in *Alleyne* applied only to mandatory minimum sentences and not to the scoring of sentencing guidelines.  The Sixth Circuit in a prior case held that *Alleyne* did not invalidate the scoring

of the federal sentencing guidelines, concluding that the United States

Supreme Court's holding in "*Alleyne* dealt with judge-found facts that raised

the mandatory minimum sentence under a statute, not judge-found facts

that trigger an increased guidelines range," which is what happened to

petitioner in this case with the scoring of the sentencing guidelines range.

*See United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014). Other

panels of the Sixth Circuit have reached the same conclusion. *See United

States v. James*, 575 F. App'x 588, 595 (6th Cir. 2014)(collecting cases

and noting that at least four post-*Alleyne* unanimous panels of the Sixth

Circuit have "taken for granted that the rule of *Alleyne* applies only to

mandatory minimum sentences."); *Saccoccia v. Farley*, 573 F. App'x 483,

485 (6th Cir. 2014)("But *Alleyne* held only that 'facts that increase a

mandatory statutory minimum [are] part of the substantive offense.'...It said

nothing about guidelines sentencing factors...."). The Sixth Circuit, in fact,

previously ruled that *Alleyne* did not decide the question whether judicial

factfinding under Michigan's indeterminate sentencing scheme violates the

Sixth Amendment. *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir.

2013).

A disagreement among circuit courts is evidence that a certain matter

of federal law is not clearly established for federal habeas purposes. *See Miller v. Colson*, 694 F.3d 691, 698 (6th Cir. 2012). The Supreme Court's failure to rule on the precise issue of whether the Sixth Amendment right to a jury applies to the scoring of sentencing guidelines, coupled with the "disagreement and confusion" among the different panels of the Sixth Circuit concerning the resolution of this issue, precludes this Court from finding that the Michigan courts' rejection of petitioner's claim was an unreasonable application of clearly established federal law. *See Worden v. McLemore*, 200 F. Supp. 2d 746, 752-53 (E.D. Mich. 2002).

Petitioner in his Temporary Writ of Habeas Corpus [ECF 1, PageID.6] challenges the trial court's restitution order as a form of punishment. Petitioner does not state a claim upon which federal habeas relief can be granted. Where a habeas petitioner is not claiming the right to be released but is challenging the imposition of a fine or other costs, he may not bring a petition for a writ of habeas corpus. *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995). Liability under a restitution order is like a fine-only conviction and is not a serious restraint on liberty as to warrant habeas relief. *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997)(quoting *Tinder v. Paula*, 725 F.2d 801, 805 (1st Cir. 1984)); *see also*

*Flores v. Hickman,* 533 F. Supp. 2d 1068, 1085 (C.D. Cal. 2008). Because the appropriate relief would be an amendment of the court's order of restitution and not release from custody, the grant of a writ of habeas corpus or other postconviction relief would be inappropriate. *United States v. Zaragoza*, 16 F. Supp. 2d 1111, 1112 (N.D. Ind. 1998).

**C. Claim # 3 - The jury instruction claim.**

Petitioner contends that he is entitled to habeas relief because the trial judge failed to properly instruct the jury as to the evidence against him. Petitioner cites to the portion of the jury instructions where the judge instructed the jury on first degree premeditated murder. He does not reference any other portion of the jury instructions. Petitioner claims that the instruction on causation was somehow erroneous because the language encouraged the jurors to find that petitioner caused the victim's death.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction

violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United* States, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.  Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

In determining whether to grant habeas relief to a habeas petitioner based upon an erroneous jury instruction, the reviewing court must determine whether that instruction had a substantial and injurious effect or influence on the jury's verdict. *See Hedgpeth v. Pulido,* 555 U.S. 57, 61-62 (2008); *California v. Ray,* 519 U.S. 2, 5 (1996).

In the present case, the multiple witnesses testified that they saw petitioner take a gun out from his coat and shoot the victim. They further testified that the victim fell to the ground, petitioner then walked up and shot the victim two more times in the head. Causation was not really an issue in this case, thus, any error in the instruction on causation did not have a substantial or injurious effect or influence on the verdict. Petitioner is not entitled to habeas relief on his third claim.

The judge instructed the jury that petitioner could be found guilty of first degree murder if he "caused the death of Richard Jennings; that is Richard Jennings died as a result of the gunshot wounds inflicted by the defendant. Second, the defendant intended to kill Richard Jennings. Third, that this intent to kill was premeditated; that is thought out beforehand. Fourth, that the killing was deliberate which means the defendant considered the pros and cons of the killing and thought about it and chose his actions before he did it. There must have been real and substantial reflection for long enough to give a reasonable person a chance to think twice about the intent to kill. The law does not say how much time is needed." (T. 12/13/2012, pp. 14-15). Petitioner does not show how this instruction under Michigan law was incorrect. Petitioner's third claim is

meritless.

### D. Claim # 4 - The ineffective assistance of trial counsel claim.

Petitioner argues that in his fourth claim that he was denied the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding

in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable- a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to the

§ 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner alleges that he was denied the effective assistance of trial counsel when counsel failed to make an *Alleyne* challenge at the time of sentencing or appellate counsel failed to raise a challenge to the sentencing guidelines on his appeal of right. *Alleyne,* however, was decided after petitioner's sentencing, and his appeal by right with the Michigan Court of Appeals had concluded; therefore, the failure of petitioner's trial and appellate counsel to raise objections based on *Alleyne* did not constitute deficient assistance of counsel. *See Nelson v. U.S.,* 406 F. Supp. 2d 73, 75 (D.D.C. 2005).

Petitioner alleges that trial counsel was ineffective by failing to object to the jury charge of causation for the reasons set forth in Claim # 3.

This Court already determined that petitioner was not entitled to

habeas relief in Claim # 3, because he was unable to show, under the exacting standards for obtaining habeas relief on instructional error, that the instructions so infected the trial as to deny petitioner due process. Furthermore, the instruction was not improper. Because these instructions did not violate petitioner's right to due process or a fair trial, petitioner was not prejudiced by counsel's failure to object to the instruction. *See Cipriano v. Birkett*, 42 F. App'x 680, 685 (6th Cir. 2002).

Petitioner alleges that trial counsel was ineffective by failing to interview witnesses and/or prepare for trial.

Petitioner contend that Jessie Meyers, if called, would testify that petitioner was not the aggressor but was trying to retreat at the time of the incident. (ECF 11-15, PageID 1206).

There are several problems with petitioner's evidence. First, petitioner never presented a sworn affidavit to the state courts. The affidavit of Meyers attached to petitioner's Standard 4 brief is unsworn. (See ECF 11-15, Pg Id 1263). An unsworn affidavit cannot be used to prove a habeas claim. *See e.g. Clark v. Waller,* 490 F.3d 551, 553, 558 (6th Cir. 2007)(unauthenticated affidavit from person whom petitioner claims should have been called as a defense witness could not support

ineffective assistance of counsel claim). Petitioner has not even provided a

copy of an affidavit from Mr. Meyers to this Court.

Secondly, the proposed witness testimony directly contradicts the

eyewitness testimony presented at trial, and as found by the Michigan

Court of Appeals.

> In the instant case, defendant clearly mischaracterizes the
> nature of an alibi witness. Defendant claims that Meyers would
> have testified that defendant acted in self-defense. This is not
> an alibi witness, but instead, a corroborating witness to the
> events that occurred. Defendant supports his claim regarding
> the content of Meyers's proposed testimony with an affidavit
> from Meyers. However, because this affidavit is not part of the
> lower court record, the content of this affidavit is not considered
> by this Court, and review is limited to mistakes apparent on the
> record. *Jordan*, 275 Mich.App at 667; *Powell*, 235 Mich.App at
> 561 n 4. Beyond defendant's mere assertions regarding what
> Meyers would have testified to, defendant provided no proof
> and thus, he failed to establish a factual predicate for his claim.
> *Carbin*, 463 Mich. at 600. Even assuming Meyers would have
> testified that defendant acted in self-defense, three other eye
> witnesses observed defendant shoot Jennings twice while
> Jennings was already down on the ground. Moreover, all the
> eye witnesses, with exception of defendant, testified that
> Jennings was unarmed during the whole incident. Thus, even if
> Meyers's testimony on self-defense was provided, the
> prosecution presented a number of witnesses that testified that
> defendant did not act in self-defense in using deadly force.
> Additionally, it appears that trial counsel's strategy was not
> focused on self-defense, but rather, an attempt to prove that
> defendant was legally insane at the time of the offense. Given
> the number of eyewitnesses to the shooting and their
> statements to police, this was a reasoned approach. Trial
> counsel presented two experts that testified regarding

defendant's schizoaffective bipolar disorder, and focused on defendant's state of mind at the time of the offense. Therefore, defendant failed to overcome the strong presumption that it was sound trial strategy to emphasize an insanity defense, rather than self-defense. *Sabin*, 242 Mich.App at 659.

*People v. Payne*, 2014 WL 2040052, at *5.

The trial record also indicates that James Heath testified that he watched the entire argument and witnessed the shooting from the driveway of the house next door. There was nothing blocking his view and he clearly could see the gun. Heath testified that when petitioner pulled out the gun, he was aiming the gun at the victim's face. Heath further testified that there was absolutely nothing in the hands of the victim. Petitioner fired two shots initially at the victim. The victim fell to the ground in a sitting position. Heath then testified that he saw petitioner fire two additional shots to the victim's head. (T. 12/10/2012, pp. 72-75).

Finally, none of the evidence from the trial suggests that petitioner would have had a viable self-defense claim. To be lawful self-defense, the evidence must show that: (1) the defendant honestly and reasonably believed that he was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant

was not the initial aggressor. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002)(citing *People v. Barker*, 437 Mich. 161, 165; 468 N.W.2d 492 (1991); *People v. Kemp*, 202 Mich. App. 318, 322; 508 N.W.2d 184 (1993); *People v. Reason*, 148 Mich. App. 27, 31; 384 N.W.2d 72 (1985)).  Under Michigan law, a defendant is not entitled to use any more force than is necessary to defend himself. *Johnigan,* 207 F. Supp. 2d at 609 (citing *Kemp*, 202 Mich. App. at 322).  "[T]he law of self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Johnigan,* 207 F. Supp. 2d at 609 (internal citation omitted).

   In light of the trial testimony, there is nothing to indicate that Jessie Meyers would have offered testimony at trial to support petitioner's assertion that he was trying to retreat at the time of the incident and was acting in self defense.  A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F.3d 520, 527 (6th Cir. 2004)(internal quotation omitted).

Petitioner alleges that trial counsel was ineffective by failing to interview the state's psychiatrist to ascertain petitioner's state of mind at the time of arrest.

The Michigan Court of Appeals rejected petitioner's claim finding that trial counsel's strategy was to surprise the state's psychiatrist on the stand and discredit her conclusions. *People v. Payne*, 2014 2040052, at *5. Apparently, trial counsel succeeded in gaining an admission that "this would have made it in my report if I had that paragraph," and the psychiatrist testified that the additional information would have affected her opinion. (T. 12/12/2012, pp. 44-46).

Petitioner is not entitled to relief on his claim, because he has failed to provide any basis to support his claim or show how he was prejudiced by trial counsel's failure to question this witness prior to trial. *Daniel v. Palmer*, 719 F. Supp. 2d 817, 829 (E.D. Mich. 2010), *rev'd on other grds sub nom. Daniel v. Curtin*, 499 F. App'x 400 (6th Cir. 2012)(Defendant was not deprived of effective assistance of counsel by counsel's failure to conduct pretrial interview of one prosecution witness, in murder trial, absent showing that witness was willing to talk with defense counsel other than from the witness stand or that counsel's cross-examination of the

witness was somehow inadequate).

Petitioner is not entitled to relief on his ineffective assistance of trial counsel claims.

### E. Claim # 5 - The ineffective assistance of appellate counsel.

Petitioner alleges that appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claims on his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).  However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Petitioner's underlying claims are without merit.  Therefore, "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in his handling of petitioner's direct appeal.  Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

### IV.  Conclusion

The Court will deny the petition for a writ of habeas corpus.  The

Court will also deny a certificate of appealability to petitioner.  In order to

obtain a certificate of appealability, a prisoner must make a substantial

showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To

demonstrate this denial, the applicant is required to show that reasonable

jurists could debate whether, or agree that, the petition should have been

resolved in a different manner, or that the issues presented were adequate

to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S.

473, 483-84 (2000).  When a district court rejects a habeas petitioner's

constitutional claims on the merits, the petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the

constitutional claims to be debatable or wrong. *Id.* at 484.  "The district

court must issue or deny a certificate of appealability when it enters a final

order adverse to the applicant."  Rules Governing § 2254 Cases, Rule

11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a

certificate of appealability because he has failed to make a substantial

showing of the denial of a federal constitutional right. *Myers v. Straub,* 159

F. Supp. 2d 621, 629 (E.D. Mich. 2001).  The Court will also deny petitioner

leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

Dated: April 2, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on April 2, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk